Michael Yancey, III, NV #16158
**CONSUMER JUSTICE LAW FIRM**
2300 West Sahara Ave. Suite 800
Las Vegas, NV 89102
E: myancey@consumerjustice.com
T: (480) 573-9272
F: (480) 613-7733

*Attorney for Plaintiffs*
*Donald Weeks & Deborah Weeks*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEVADA

DONALD WEEKS; and DEBORAH WEEKS,

                Plaintiffs,

v.

EQUIFAX INFORMATION SERVICES, LLC; and NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER,

                Defendants.

Case No.: 2:26-cv-00203

**COMPLAINT AND**
**DEMAND FOR JURY TRIAL**

Plaintiffs Donald Weeks ("Mr. Weeks") and Deborah Weeks ("Mrs. Weeks") (collectively, "Plaintiffs"), through counsel, allege violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.,* against Defendants Equifax Information Services, LLC ("Equifax" or "CRA Defendant"); and Nationstar Mortgage LLC d/b/a Mr. Cooper ("Nationstar" or "Furnisher Defendant") (CRA Defendant and Furnisher Defendant collectively referenced as the "Defendants").

### JURISDICTION AND VENUE

1.      This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 because

1

Plaintiffs allege violations of the FCRA, a federal law. *See* 15 U.S.C. § 1681p (permitting actions to enforce liability in an appropriate United States District Court).

2. Venue in the District of Nevada is proper pursuant to 28 U.S.C. § 1391 because Defendants regularly transact business within this District, are otherwise subject to personal jurisdiction in this District, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

**PARTIES**

3. Plaintiffs incorporate herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

4. Plaintiffs are natural persons who reside in Henderson, Nevada.

5. Plaintiffs are each "consumers" as defined by the FCRA, 15 U.S.C. § 1681a(c).

6. Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers in the form of consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, GA 30309. Equifax can be served at its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

7. Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper is a "person" as that term is defined by 15 U.S.C. § 1681a(b) and a "furnisher," as that term is used by the FCRA. Nationstar's principal place of business is located at 8950 Cypress Waters Boulevard Coppell, Texas 75019.

8. During all times pertinent to this Complaint, Defendants were authorized to conduct business in the State of Nevada and conducted business in the State of Nevada on a routine and systematic basis.

2

9. During all times pertinent to this Complaint, Defendants acted through authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

10. Any violations by the Defendants were not in good faith, but were knowing, negligent, willful, and/or intentional, and the Defendants did not maintain procedures reasonably adapted to avoid any such violations.

## **FACTUAL ALLEGATIONS**

11. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

12. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

13. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

14. The FCRA seeks to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

15. The CRA Defendant, one of the three major consumer reporting agencies (at times referred as a "CRA") in the United States, regularly publishes and distributes credit information about Plaintiffs and other consumers through the sale of consumer reports.

16. The CRA Defendant regularly obtains consumer bankruptcy information to include in consumer reports.

17. The CRA Defendant's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information:

this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

18.    The CRA Defendant obtains consumer information from various sources. Some consumer information is sent directly to the CRA Defendant by furnishers, and other information is independently gathered by the CRA Defendant from third party providers, vendors or repositories, like computerized reporting services such as PACER and Lexis-Nexis.

19.    The CRA Defendant regularly seeks out and procures public record information, including consumer bankruptcy filing and discharge information, with the intention of including it on the consumer reports the CRA Defendant sells to third parties such as lenders.

20.    The diligence the CRA Defendant exercises in uncovering and recording consumer bankruptcy filings is not replicated in the CRA Defendant's subsequent reporting of bankruptcy discharges and their effect on consumers debts.

21.    The vast majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like the CRA Defendant) to make lending decisions.

22.    Those institutions also use FICO Scores and other proprietary third-party algorithms (or "scoring" models), including debt-to-income ratios, to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and dates of delinquencies contained in the CRA Defendant's reports.

23.    The information the CRA Defendant includes in a consumer report contributes to a consumer's overall creditworthiness and determines his or her FICO Score(s).

24. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

25. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

a. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist. The more severe, recent, and frequent late payments are, the lower the consumer's FICO Score will be.

b. The "amount of debt" a consumer owes has a major impact on his or her credit score. When a CRA reports a debt as outstanding when it is in fact discharged, the CRA is indicating that the consumer's "amount of debt" is higher than it actually is, which will undoubtedly impact the consumer's credit score.

26. CRA Defendant knows that lenders also consider a consumer's debt-to-income ratio (DTI) before deciding to extend credit or approve financing terms.

27. DTI compares the total amount a consumer owes to the total amount a consumer earns.

28. CRA Defendant regularly provides information that allows lenders to calculate the "total amount of debt" a consumer owes based on the total debt reported by CRA Defendant.

29. A consumer's income, however, is not included in their consumer report; only their amount of debt is. Consumers enter their income into credit applications. Therefore, DTI is not calculated in a consumer's credit score but is a factor in credit decisions.

30. The higher amount of reported debt that a consumer has, or appears to have, or rather is *reported* to have, the less favorable the consumer's DTI will be, and the more difficult it will be for a consumer to obtain credit and favorable credit terms. Rather, if offered credit at all, consumers will be offered less credit at higher interest rates.

31. Equifax is aware that DTI plays an impactful role in the evaluation of consumer credit applications, stating on its own website: "Lenders may consider your DTI ratio as one factor when determining whether to lend you additional money and at what interest rate. Generally speaking, the lower a DTI ratio you have, the less risky you appear to lenders."

32. The CRA Defendant is well aware that the effect of a Discharge Order in a Chapter 13 Bankruptcy is to discharge unsecured debts if those debts are listed in the debtor's bankruptcy petition.

33. The CRA Defendant is further aware that the default rule is that all unsecured debts will be listed and discharged in Chapter 13 bankruptcy and that only on rare occasions will an unsecured debt not be discharged upon completion of a Chapter 13 plan.

34. The CRA Defendant is also notified of consumer bankruptcies by furnishers of information and from the information the CRA Defendant independently gathers from third parties.

35. Despite the availability of accurate consumer information, CRA Defendant regularly reports inaccurate information about accounts after consumers receive a Chapter 13 Discharge Order.

36. The CRA Defendant's unreasonable policies and procedures cause it to routinely report inaccurate and materially misleading information about consumers, including Plaintiffs, who have been discharged from Chapter 13 Bankruptcy.

37. The CRA Defendant routinely reports inaccurate, and materially misleading information about consumers like Plaintiffs, without verifying or updating the information as required by § 1681e(b), despite possessing information: inconsistent with the reported

6

information and/or possessing information that establishes the reported information is inaccurate.

38.    Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, the CRA Defendant frequently reports information regarding pre-bankruptcy debts based on incomplete or knowingly inaccurate information.

39.    The CRA Defendant regularly publishes consumer information that conflicts with information: provided by data furnishers to the CRA Defendant, already included in the CRA Defendant's credit files, contained in public records that the CRA Defendant regularly accesses, and/or sourced through the CRA Defendant's independent and voluntary efforts.

40.    Further, the CRA Defendant knows the information it reports about consumers bankruptcies is often inconsistent with public records, furnished or reported information, and/or information contained in the CRA Defendant's own files.

41.    Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against the CRA Defendant for its inaccurate consumer reporting following a Chapter 13 discharge.

42.    Thus, the CRA Defendant is on continued notice of their inadequate post-bankruptcy reporting procedures which causes the CRA Defendant to report inaccurate balances, account statuses, payment histories, and/or payment statuses.

**A.    Allegations Specific to the Credit Reporting of Plaintiffs**

43.    Plaintiffs filed a Chapter 13 Bankruptcy on or about September 24, 2018, in the United States Bankruptcy Court for the District of Nevada (Case No. 18-15714).

44.    On or about February 21, 2019, Plaintiffs filed a motion to "strip off" and modify the rights of Plaintiffs' second mortgage with Nationstar (Account No. ending in *8462) (the "Account").

45.    On or about May 3, 2019, the motion was granted and Plaintiffs' mortgage account was found to have no equity in the underlying property, and the debt was officially reclassified as a general unsecured claim.

46.    Plaintiffs complied with all obligations and made all payments during the Chapter 13 Bankruptcy.

47.    Accordingly, Plaintiffs received an Order of Discharge on or about January 4, 2024.

48.    Thereafter, Plaintiffs were not personally liable for their dischargeable debts, and those debts have a $0 dollar balance after the bankruptcy discharge.

49.    In or around August 28, 2025, Plaintiffs obtained and reviewed copies of their credit reports from the CRA Defendant, to ensure their bankruptcy was being accurately reported.

50.    Upon review of their credit reports, Plaintiffs observed that the CRA Defendant reported inaccurate and/or materially misleading information concerning the Account.

51.    In particular, Plaintiffs' Equifax credit reports, dated August 28, 2025, and September 2, 2025, reported the Account with a status Charge Off.

52.    The Account was discharged in Plaintiffs' bankruptcy and should not have been inaccurately reported with a Charge Off status.

53.    Additionally, the Account should have been reported with an accurate status such as included in or discharged in bankruptcy that reflects the actual status of the Account, instead of an incorrect Charge Off status.

54.    Plaintiffs maintain extremely positive credit profiles and histories.

55.    Plaintiffs have always been responsible debtors and users of credit.

56.    Plaintiffs filed for bankruptcy under Chapter 13 due to a housing market fluctuation that caused them to be facing a balloon payment on their second mortgage, the Nationstar Account, in 2018.

57.    Aside from the Chapter 13 bankruptcy to manage payments in relation to their second mortgage debt, Plaintiffs had no other credit delinquencies.

58.    Indeed, Plaintiffs' Equifax credit reports dated in September or August of 2025 reflect that the Chapter 13 bankruptcy was no longer reporting on their credit reports, and the

8

Nationstar Account charge-off was the ***only*** negative item reporting on their Equifax credit reports.

**B.    Plaintiffs' Disputes to the CRA Defendant**

59.    On or about September 12, 2025, Plaintiffs each mailed a dispute letter to Equifax disputing Equifax's reporting of the Account. Plaintiffs' dispute informed Equifax that the Account was discharged in Plaintiffs' bankruptcy.

60.    Upon information and belief, the CRA Defendant received Plaintiffs' dispute.

61.    Upon information and belief, the CRA Defendant forwarded Plaintiffs' dispute to Nationstar, as required by the FCRA.

62.    On or about October 8, 2025, Equifax responded to Plaintiffs' dispute.

63.    Equifax failed to correct its reporting, however, and continued to report the Account as having been Charged Off.

64.    Worse still, by September 25, 2025, upon information and belief, the Nationstar Account, which was included in the bankruptcy and therefore would have been reporting adversely either, accurately, as discharged in bankruptcy or, inaccurately, as a charge-off, became obsolete and no longer reportable because the Account antedated the report by seven (7) years.

65.    Accordingly, reporting the Account at all, from September 25, 2025, and on, more than seven (7) years after the date of filing of the Chapter 13 bankruptcy, was a violation of 15 U.S.C. § 1681c(a).

66.    On or about November 26, 2025, Plaintiffs obtained another copy of their Equifax credit reports and observed that Equifax continued to report the Account as having been Charged Off.

67.    Furthermore, the Account was reporting by Equifax as having a "Charge Off Amount of $59,680, which was materially misleading because the Account had not been charged off but had, rather, been discharged or included in bankruptcy.

68. Upon information and belief, Nationstar received notice of Plaintiffs' disputes from the CRA Defendant.

69. Upon information and belief, the Furnisher Defendant failed to reasonably reinvestigate Plaintiffs' disputes.

70. Upon information and belief, the Furnisher Defendant either did not reinvestigate Plaintiffs' disputes at all or simply confirmed that what they were already reporting was accurate without reviewing the substance of Plaintiffs' disputes.

71. Despite knowing that the Account was not Charged Off, Equifax continued to verify its inaccurate reporting.

72. The Furnisher Defendant's conduct was willful.

73. Despite ample reason to doubt any such information provided by Plaintiffs, the CRA Defendant continued to erroneously report the Account in Plaintiffs' credit file and/or consumer reports.

74. Upon information and belief, the CRA Defendant failed to reasonably reinvestigate Plaintiffs' disputes. Instead, the CRA Defendant mindlessly parroted the inaccurate information provided by Nationstar without evaluating the substance of Plaintiffs' disputes or conducting any reinvestigation at all.

75. Plaintiffs have been extremely frustrated by their inability to correct the inaccurate furnishing of information by the Furnisher Defendant and/or the inaccurate consumer reporting by the CRA Defendant. Plaintiffs have expended a substantial amount of time and labor to correct this matter, all to no avail.

76. Upon information and belief, the CRA Defendant continue to report the Account with an inaccurate status.

77. Following Mrs. Weeks's dispute, several potential creditors, including, but not limited to, Discover and Comenity Bank, viewed Mrs. Weeks's Equifax credit reports but, upon information and belief, due to Defendants' inaccurate reporting, decided not to extend offers of credit that Mrs. Weeks otherwise would have qualified for.

78. Following Mr. Weeks's dispute, several potential creditors, including, but not limited to, Citibank, Capital One, and Discover, viewed Mr. Weeks's Equifax credit reports but, upon information and belief, due to Defendants' inaccurate reporting, decided not to extend offers of credit that Mr. Weeks otherwise would have qualified for.

79. The CRA Defendant's inaccurate reporting of the Account, along with additional information belonging to Plaintiffs, was published to potential creditors during the process of Plaintiffs' credit applications.

80. As a direct result of the Defendants' conduct, Plaintiffs have suffered from decreased creditworthiness due to the inclusion of the Account in Plaintiffs' credit file and/or consumer reports.

81. As a direct result of the Defendants' conduct, Plaintiffs wasted their time, postage, and labor by writing and mailing disputes.

82. Plaintiffs also incurred attorney's fees and charges for a necessary review of their credit reports.

83. As a direct result of the Defendants' conduct, Plaintiffs has suffered actual damages, including but not limited to, the above-referenced economic damages, stress, anxiety, mental anguish, sleepless nights, emotional distress, a substantial amount of wasted time, the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting, weight gain, decreased creditworthiness, loss of credit opportunities, dissuasion from seeking credit opportunities, and other damages continuing in nature.

## COUNT I
### The CRA Defendant's Violations of 15 U.S.C. § 1681i

84. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

85. Under the FCRA, when a consumer reporting agency receives a dispute from a consumer that indicates an item of information in his or her credit file is inaccurate or incomplete, the consumer reporting agency is required to conduct a reasonable investigation of the disputed

information and forward the dispute to the furnisher within five days of its receipt. 15 U.S.C. § 1681i.

86. If the CRA Defendant is unable to verify the accuracy of the information after conducting a reinvestigation, they must delete the disputed tradelines.

87. The CRA Defendant violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the information they reported about Plaintiffs and their accounts were accurate.

88. The CRA Defendant violated 15 U.S.C. § 1681i(a)(1) by failing to correct or delete the inaccurate information reported in Plaintiffs' consumer reports.

89. Upon information and belief, the CRA Defendant continued to blindly rely on inaccurate information provided by the Furnisher Defendant despite possessing information that directly conflicted with the information provided by Plaintiffs.

90. The CRA Defendant had reason to know that the information furnished by the Furnisher Defendant was inaccurate or otherwise unreliable.

91. Upon information and belief, the CRA Defendant did not undertake any action to ensure that information received from the Furnisher Defendant was accurate or reliable.

92. The CRA Defendant possessed information provided by Plaintiffs that directly contradicted the Furnisher Defendant reporting of Plaintiffs' account.

93. Yet despite knowledge of the information's unreliability, the CRA Defendant made no independent effort to verify its accuracy.

94. Upon information and belief, the CRA Defendant violated the FCRA by failing to provide the Furnisher Defendant with all the relevant information regarding Plaintiffs, their disputes, and the Account. 15 U.S.C. § 1681i(a)(2)(A).

95. The CRA Defendant violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the information disputed by Plaintiffs was inaccurate.

96. The CRA Defendant violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiffs' credit file upon reinvestigation of Plaintiffs' dispute.

97. The CRA Defendant violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly correct the disputed inaccurate information in Plaintiffs' credit file upon reinvestigation of Plaintiffs' dispute.

98. As a result of the CRA Defendant's violations of § 1681i, Plaintiffs have suffered actual damages as detailed herein.

99. Upon information and belief, the CRA Defendant knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgations made by the Federal Trade Commission (FTC) and Consumer Financial Protection Bureau (CFPB), and in well-established case law.

100. Therefore, the CRA Defendant acted consciously in failing to adhere to its obligations under the FCRA.

101. The CRA Defendant's violations of § 1681i were willful. Therefore, the CRA Defendant is individually liable to Plaintiffs for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. § 1681n.

102. Alternatively, the CRA Defendant's violations of 15 U.S.C. § 1681i were negligent. Therefore, the CRA Defendant is individually liable to Plaintiffs for statutory and actual damages in an amount to be determined a trial. 15 U.S.C. § 1681o.

103. In any event, the CRA Defendant is liable for Plaintiffs' reasonable attorney's fees and costs pursuant to 15 U.S.C §§ 1681n, 1681o.

## COUNT II
### The CRA Defendant's Violations of 15 U.S.C. § 1681c

104. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

13

105. Under the FCRA, a consumer reporting agency must exclude from consumer reports adverse items information that antedate the report by more than seven years. 15 U.S.C. § 1681c(a).

106. Under the FCRA, for purposes of determining the date of the adverse event from which seven years are counted pursuant to 15 U.S.C. § 1681c(a), bankruptcies are dated as beginning on their date of filing.

107. The Nationstar Account had been discharged in a bankruptcy that had been filed on September 24, 2018.

108. Ergo, the Nationstar Account turned adverse, for 15 U.S.C. § 1681c(a) purposes, on September 24, 2018.

109. Accordingly, the CRA Defendant was required to exclude from consumer reports the Nationstar Account in its entirety beginning from the date of September 25, 2025.

110. The CRA Defendant violated 15 U.S.C. § 1681c(a) by failing to exclude the adverse Nationstar Account after September 25, 2025.

111. The CRA Defendant violated 15 U.S.C. § 1681c(a) by publishing the Nationstar Account to third parties in consumer reports.

112. The CRA Defendant had easy access to the public record bankruptcy information that would have provided it with knowledge of the date of the bankruptcy filing that was relevant to the reporting of, or, rather, its duty to not report, the Nationstar Account.

113. Yet despite ready access and knowledge of that information, the CRA Defendant made no effort to remove the non-reportable Account.

114. As a result of the CRA Defendant's violations of § 1681c(a), Plaintiffs have suffered actual damages as detailed herein.

115. Upon information and belief, the CRA Defendant knew or should have known about its obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgations made by the Federal Trade Commission (FTC) and Consumer Financial Protection Bureau (CFPB), and in well-established case law.

116. Therefore, the CRA Defendant acted consciously in failing to adhere to its obligations under the FCRA.

117. The CRA Defendant's violations of § 1681c(a) were willful. Therefore, the CRA Defendant is individually liable to Plaintiffs for actual, statutory, and punitive damages in an amount to be determined at trial. 15 U.S.C. § 1681n.

118. Alternatively, the CRA Defendant's violations of 15 U.S.C. § 1681c(a) were negligent. Therefore, the CRA Defendant is individually liable to Plaintiffs for statutory and actual damages in an amount to be determined a trial. 15 U.S.C. § 1681o.

119. In any event, the CRA Defendant is liable for Plaintiffs' reasonable attorney's fees and costs pursuant to 15 U.S.C §§ 1681n, 1681o.

**COUNT III**
**The Furnisher Defendant's Violations of 15 U.S.C. § 1681s-2(b)**

120. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

121. At all times pertinent hereto, the Furnisher Defendant was a "person" as that term is defined by 15 U.S.C § 1681a(b) and a "furnisher of information" providing information about Plaintiffs to two of the three major credit reporting agencies, the CRA Defendant.

122. The Furnisher Defendant has a duty to provide accurate information to consumer reporting agencies. 15 U.S.C. § 1681s-2(a).

123. The Furnisher Defendant has a duty to promptly correct inaccurate information after receiving notice of a consumer's credit dispute from a consumer reporting agency. 15 U.S.C § 1681s-2(a).

124. The Furnisher Defendant failed to follow reasonable procedures to assure it only provided maximally accurate information about Plaintiffs' accounts to the consumer reporting agencies.

125. On at least one occasion within the past two years, by example only and without limitation, the Furnisher Defendant also violated 15 U.S.C § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiffs' disputes.

126. The Furnisher Defendant has an obligation under 15 U.S.C. § 1681s-2(b) to conduct an investigation after a consumer reporting agency notifies them that a consumer has disputed the accuracy of the information they furnished; review all relevant information during their investigation of the dispute; report the results of the investigation to the relevant consumer reporting agencies; and if the investigation reveals that the furnished information was incomplete or inaccurate, notify every consumer reporting agency that received the deficient information of the investigation results.

127. If the investigation reveals that the disputed information is incomplete, inaccurate, or unverifiable, it must be modified, deleted, or permanently blocked. 15 U.S.C. § 1681s-2(b)(1)(E).

128. Upon information and belief, the CRA Defendant forwarded Plaintiffs' disputes to the Furnisher Defendant in or around September 12, 2025.

129. Each time the Furnisher Defendant was notified of the disputed issues with the Account, it failed to properly investigate Plaintiffs' dispute.

130. Upon information and belief, the Furnisher Defendant does not conduct any investigation of disputed accounts but merely verify accounts for data conformity with its internal records.

131. The Furnisher Defendant has been on notice for over 18 years that investigations must be meaningful, searching inquiries. *Johnson v. MBNA Am. Bank*, 357 F.3d 426 (4th Cir. 2004).

132. Upon information and belief, by example only and without limitation, the Furnisher Defendant violated 15 U.S.C. § 1681s-2(b)(1)(E) when it failed to delete and permanently block the Account from being reported to the CRA Defendant.

16

133. Upon information and belief, by example only and without limitation, the Furnisher Defendant violated 15 U.S.C § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiffs' disputes after being notified of the disputes by the CRA Defendant.

134. Upon information and belief, by example only and without limitation, the Furnisher Defendant failed to review all relevant information while investigating Plaintiffs' disputes, in violation of 15 U.S.C. § 1681s-2(b)(1)(B).

135. Upon information and belief, the Furnisher Defendant's actions in the instant matter are representative of their normal policies and procedures.

136. Upon information and belief, the Furnisher Defendant's regular procedures only require them to complete a cursory review of consumer disputes, regardless of the dispute content, magnitude, or frequency.

137. Upon information and belief, the Furnisher Defendant's procedures only require them to respond to disputes with basic consumer information without conducting a reasonable investigation of the disputed information.

138. In sum, the Furnisher Defendant's conduct violated § 1681s-2(b) of the FCRA.

139. Upon information and belief, the Furnisher Defendant knew or should have known about their obligations under the FCRA. These obligations are well established in the plain language of the FCRA, promulgations made by the Federal Trade Commission (FTC) and Consumer Financial Protection Bureau (CFPB), and in well-established case law.

140. Therefore, the Furnisher Defendant acted consciously in failing to adhere to their obligations under the FCRA.

141. The Furnisher Defendant each willfully and/or negligently violated the foregoing provisions of the FCRA in the following manner:

    a. By willfully and/or negligently failing to conduct an investigation of the inaccurate information that Plaintiffs disputed;

    b. By willfully and/or negligently failing to review all relevant information concerning Plaintiffs' disputes;

c. By willfully and/or negligently failing to report the results of its investigation of the inaccurate information concerning Plaintiffs to all credit reporting agencies;

d. By willfully and/or negligently failing to modify or delete incomplete or inaccurate information in Plaintiffs' file after conducting an investigation;

e. By willfully and/or negligently failing to permanently block the reporting of the inaccurate information disputed by Plaintiffs and continuing to report and furnish inaccurate or incomplete information in Plaintiffs' file to the credit reporting agencies; and

f. By willfully and/or negligently failing to comply with all requirements imposed on "furnishers of information" by 15 U.S.C.§ 1681s-2(b).

142. As a result of this conduct, action, and inaction of the Furnisher Defendant, Plaintiffs have suffered actual damages, as detailed herein.

143. The Furnisher Defendant's violations of 15 U.S.C. § 1681s-2(b) were willful. Therefore, the Furnisher Defendant is liable to Plaintiffs for actual, statutory, and punitive damages in amounts to be determined at trial. 15 U.S.C. § 1681n.

144. Alternatively, the Furnisher Defendant's violations of 15 U.S.C. § 1681s-2(b) were negligent. Therefore, the Furnisher Defendant is liable to Plaintiffs for statutory and actual damages in amounts to be determined at trial. 15 U.S.C. § 1681o.

145. In any event, the Furnisher Defendant is liable for Plaintiffs' reasonable attorney's fees and costs pursuant to 15 U.S.C §§ 1681n, 1681o.

**TRIAL BY JURY**

Plaintiffs are entitled to and hereby demand a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Donald and Deborah Weeks respectfully request that judgment be entered against Defendants for the following:

a. Actual damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

b.    Statutory damages pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

c.    Punitive damages pursuant to 15 U.S.C. § 1681n;

d.    An award of costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681o and/or 1681n;

e.    All pre-judgment and post-judgment interest as may be allowed under the law; and

f.    Any other and further relief as the Court may deem just and proper.

Dated: January 28, 2026                    Respectfully submitted,

*s/ Michael Yancey*
Michael Yancey, III, NV #16158
**CONSUMER JUSTICE LAW FIRM**
2300 West Sahara Ave. Suite 800
Las Vegas, NV 89102
E: myancey@consumerjustice.com
T: (480) 573-9272
F: (480) 613-7733

*Attorney for Plaintiffs*
*Donald Weeks & Deborah Weeks*

19